IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-02726-PAB-NRN

JESSICA MURPHY, on her own behalf and as the administratrix of the Estate of Abel Yohannes,

    Plaintiff,

v.

CITY OF AURORA,
BRADLEY JESIK, in his individual capacity,
ERIC DUNSTON, in his individual capacity, and
GARRET STRODE, in his individual capacity,

    Defendants.

___

**ORDER**
___

This matter comes before the Court on the Partial Motion to Dismiss Plaintiff's Second Amended Complaint (ECF 36) [Docket No. 38]. Plaintiff Jessica Murphy filed a response, Docket No. 44, and defendants filed a reply. Docket No. 45. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**I.  BACKGROUND**[1]

On September 30, 2022, Abel Yohannes met his friend, Xavier Anthony Johnson, who had requested that Mr. Yohannes drive Mr. Johnson and his girlfriend to a 7-Eleven store in Aurora, Colorado. Docket No. 36 at 7, ¶¶ 29-30. At approximately 1:14 a.m., Officer Garret Strode, a police officer in the Aurora Police Department, was dispatched to the 7-Eleven to investigate a potential robbery. *Id.* at 6-7, ¶¶ 15, 31-32. Officer

___

[1] The following facts are taken from the second amended complaint, Docket No. 36, and are presumed true for the purpose of ruling on defendants' motion to dismiss.

Strode reviewed the 7-Eleven security footage, which was obstructed. *Id.* at 8, ¶¶ 33, 36. He saw a suspect enter the 7-Eleven, grab an item, and leave without paying. *Id.*, ¶ 34. Officer Strode concluded that no "felony menacing" occurred. *Id.*, ¶ 33. The store clerk, a witness, and Officer Strode were unable to properly identify the vehicle used in the alleged robbery. *Id.*, ¶ 35. However, based on the limited information available to him, Officer Strode determined that the vehicle was a Volkswagen Tiguan SUV. *Id.*, ¶ 36.

Officer Strode was then dispatched on a separate call to the Wolf's Motor Inn to investigate a complaint regarding an evictee causing property damage in room 121. *Id.*, ¶ 38. After obtaining the name of the evictee, Officer Strode determined that there was an active extraditable warrant for the evictee. *Id.*, ¶ 39. He concluded that the evictee was armed, dangerous, and possibly on drugs. *Id.* Officer Strode then called for backup. *Id.*, ¶ 40.

At approximately 6:00 a.m., as police officers were walking to room 121, Officer Strode saw a Volkswagen Tiguan SUV and concluded that it was the same vehicle from the 7-Eleven robbery. *Id.* at 9, ¶¶ 41-43. Mr. Yohannes and Mr. Johnson were sitting in the vehicle. *Id.*, ¶ 43. Officer Strode called for additional backup to investigate the potential robbery suspects. *Id.*, ¶¶ 44-45.

Officer Strode, defendant Officer Eric Dunston, and several other police officers then created a tactical plan. *Id.*, ¶ 47. Officer Strode was worried that the car's occupants were armed, despite having no evidence to conclude that Mr. Yohannes was armed. *Id.*, ¶ 46. The tactical plan was to use a 40mm less lethal munitions launcher to break out the window of the car to ensure that police would not have to approach the

2

car. *Id.* at 10, ¶ 54. The officers believed that breaking the window would allow the men in the car to hear the officer's commands as they stood sixteen feet away from the car. *Id.*

Standing sixteen feet away, police officers order the occupants of the vehicle to exit and put their hands up. *Id.* at 11, ¶ 55. At approximately 6:16 a.m., a 40 mm non-lethal bullet hit and bounced off the vehicle. *Id.*, ¶ 56. At that time, Mr. Yohannes and Mr. Johnson "had no idea what was occurring and had not heard any of the commands the Officers gave." *Id.*, ¶ 57. Mr. Yohannes then slowly pulled out of the parking lot. *Id.* at 12, ¶ 60.

After exiting the parking lot, Mr. Yohannes drove on the highway in the direction of the Denver International Airport, pursued by Officer Strode and other police officers. *Id.*, ¶¶ 62-64. At 6:37 a.m. Officer Dominic Ferris performed an effective PIT maneuver by hitting Mr. Yohannes's vehicle with his own vehicle. *Id.*, ¶ 65. The collision caused Mr. Yohannes to lose control of his vehicle and strike a concrete barricade. *Id.* All the airbags in Mr. Yohannes's car were deployed after hitting the barricade. *Id.*, ¶ 66. A police vehicle struck the driver's side door of Mr. Yohannes's car, which pinned the car to the concrete barrier and prevented the door from opening. *Id.* at 13, ¶ 67. At that point, Mr. Yohannes's car was inoperable and incapacitated. *Id.* Because the airbags deployed, the interior of the driver's side of the vehicle was obscured. *Id.* at 15, 17, ¶¶ 77, 83.

Officer Strode, Officer Dunston, defendant Officer Bradley Jeskin, and other police officers surrounded Mr. Yohannes's vehicle. *Id.* at 13, ¶ 70. Numerous Aurora police officers immediately began firing their weapons into the vehicle. *Id.*, ¶ 71.

3

Officers blindly fired dozens of shots at the driver's side window and door.  *Id.* at 15, ¶ 77.  Officer Strode shot all eighteen rounds of his magazine.  *Id.*, ¶ 78.  Officer Dunston fired approximately seven bullets into the front windshield of the car while running to stand next to Officer Strode.  *Id.* at 15-16, ¶ 79.  In total, Officer Dunston fired eighteen rounds at Mr. Yohannes.  *Id.* at 16, ¶ 80.  Officer Jesik, with no view of the front of the vehicle, fired three rounds into the left side of Mr. Yohannes's car.  *Id.* at 16-17, ¶ 83.  Mr. Yohannes's autopsy showed that he was shot no less than twelve times, with four bullets piercing his head and neck.  *Id.* at 17, ¶ 87.

On October 1, 2024, Jessica Murphy, Mr. Yohannes's spouse and the administratrix of his estate, filed suit.  Docket No. 1 at 4, ¶ 7.  On February 12, 2025, Ms. Murphy filed her second amended complaint.  Docket No. 36.  In the second amended complaint, Ms. Murphy brings claims against Officers Strode, Dunston, and Jeskin, as well as against the City of Aurora ("Aurora").  *Id.* at 1.  Ms. Murphy brings a claim for "Wrongful Death through Defendant Officers['] Use of Unconstitutionally Excessive Force in Violation of the Fourth and Fourteenth Amendment under 42 U.S.C. § 1983"; a claim of "Failure to Train and Adequately Supervise and provide Leadership to Individual Defendants in Violation of the Fourth Amendment and Fourteenth Amendment" against Aurora; and a claim of "Willful and Wanton Conduct that Resulted in the Decedent's Wrongful Death" under 42 U.S.C. § 1983.  *Id.* at 20-31.

On February 27, 2025, defendants filed a partial motion to dismiss.  Docket No. 38.  Defendants seek to dismiss Ms. Murphy's claims to the extent her claims are not brought under the Fourth Amendment of the United States Constitution and because

4

Ms. Murphy fails to state a claim for willful and wanton conduct under § 1983. *Id.* at 1. Ms. Murphy responded, Docket No. 44, and defendants replied. Docket No. 45.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g., Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then

5

plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

### III.  ANALYSIS

Defendants do not contest that Ms. Murphy has plausibly stated her first and second claims under the Fourth Amendment.  *See* Docket No. 38 at 2 (acknowledging Ms. Murphy's Fourth Amendment claims as "viable").  However, defendants assert that Ms. Murphy cannot also bring her claims for excessive force and failure to train under the Fourteenth Amendment.  *Id.* at 7.  Defendants note that whether a plaintiff can bring a claim under the Fourth or Fourteenth Amendment depends on the nature of the plaintiff's claim.  *Id.* at 7-8 ("Determining which amendment applies to an allegation of excessive force requires consideration of where the plaintiff finds himself in the criminal justice system." (quoting *Est. of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (internal quotations and alterations omitted))).  Defendants state that, under Supreme Court precedent, "*[a]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."  *Id.* at 7 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Defendants contend that the Fourteenth Amendment is available only in circumstances where neither the protections of the Fourth Amendment nor the Eighth Amendment apply.  *Id.* at 8 (citing *Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010)).  Defendants argue that the allegations in the

6

complaint demonstrate that Ms. Murphy's claims are based exclusively on the uses of force involved in Mr. Yohannes's seizure, which is governed by the Fourth Amendment. *Id.* at 9.  They therefore assert that Ms. Murphy's first and second claims should be dismissed to the extent that they are based on the Fourteenth Amendment.  *Id.*

Ms. Murphy responds that she has plausibly alleged that defendants violated Mr. Yohannes's rights under the Fourteenth Amendment.  Docket No. 44 at 5, ¶ 20.  She claims that "an abuse of official power that shocks the conscience may be redressed under the Fourteenth Amendment."[2]  *Id.* at 2-3, ¶ 6 (quoting *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003)).  Ms. Murphy argues that defendants' conduct of blindly firing their weapons into a disabled vehicle with two occupants is conscience-shocking.  *Id.* at 4, ¶ 14.

Ms. Murphy acknowledges that "excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment—all depending on where the defendant finds himself in the criminal justice system."  *Id.* at 2, ¶ 3 (quoting *Porro*, 624 F.3d at 1325).  Despite such acknowledgment, Ms. Murphy fails to identify where Mr. Yohannes was in the system.  In *Est. of Booker*, the Tenth Circuit explained that, at one end of the criminal justice system, the Fourth Amendment "governs excessive force claims arising from treatment of an arrestee detained without a warrant and prior to any probable cause hearing."  *Est. of Booker*, 745 F.3d at 419 (citation, quotation,

---

[2] Because Ms. Murphy claims that defendants' conduct was conscious shocking, Ms. Murphy appears to be arguing that she has plausibly alleged that defendants violate Mr. Yohannes's substantive due process rights under the Fourteenth Amendment.  *See Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006) ("The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges.").

7

alterations, and emphasis omitted). On the other end, "claims of excessive force involving convicted prisoners arise under the Eighth Amendment." *Id.* Between the "initial seizure and post-conviction punishment—we turn to the due process clauses of the Fifth or Fourteenth Amendment." *Id.*; *see also Robertson v. Tokar*, No. 23-cv-02132-KAS, 2024 WL 4817265, at *5 (D. Colo. Nov. 18, 2024) ("The Fourteenth Amendment governs any claim of excessive force brought by a pretrial detainee—one who has had a judicial determination of probable cause as a prerequisite to the extended restraint of his liberty following arrest." (internal citations, quotations, and alterations omitted)).

To the extent that Ms. Murphy's claims are based on the PIT maneuver that possibly injured Mr. Yohannes,[3] Ms. Murphy alleges that "the PIT maneuver performed by Officer Dominic Ferris of the Aurora Police department . . . equates to the seizure of Mr. Yohannes." Docket No. 36 at 13, ¶ 68. Similarly, Ms. Murphy alleges that Mr. Yohannes was incapacitated and that his car was inoperable at the time he was shot by Officers Strode, Dunston, and Jeskin. *Id.*, ¶ 67. Therefore, the Court finds that Mr. Yohannes was detained by the police during their alleged use of excessive force. Moreover, Ms. Murphy alleges that Mr. Yohannes was fatally shot before a probable cause hearing could be had. *See id.* at 15, 17, ¶¶ 77, 86. Accordingly, Ms. Murphy's claims are governed by the Fourth Amendment. *Est. of Booker*, 745 F.3d at 419 (Fourth Amendment applies to claims arising from treatment of detained arrestee before a probable cause hearing).

---

[3] Ms. Murphy alleges that "it is unknown if Mr. Yohannes was injured after such a brutal wreck." Docket No. 36 at 12, ¶ 66.

Ms. Murphy relies on *Roska* for the proposition that the Fourteenth Amendment applies to her claims. *See* Docket No. 44 at 2-3, ¶¶ 2, 6. In *Roska*, the Court of Appeals for the Tenth Circuit held that the Fourteenth Amendment applies to excessive force claims against the government when the individual pursued by the police is not detained. *Roska*, 328 F.3d at 1243; *Farrell v. Montoya*, 878 F.3d 933, 937 (10th Cir. 2017) ("without a seizure, there can be no [Fourth Amendment] claim for excessive use of force"); *Adkins v. City of Colorado Springs*, No. 20-cv-01022-KMT, 2021 WL 810107, at *5 (D. Colo. Mar. 3, 2021) ("Officer Bellow's pre-seizure conduct is, instead, subject to Fourteenth Amendment scrutiny."). Such claims are governed by the Fourteenth Amendment because the plaintiff has not entered the criminal justice system. *Cousik v. City & Cnty. of Denver*, No. 22-cv-01213-NYW-KAS, 2024 WL 896755, at *5 (D. Colo. Mar. 1, 2024) ("But if the plaintiff has not entered the criminal justice system and there has been no seizure at all, the Fourteenth Amendment governs excessive force claims." (citing *Mahdi v. Salt Lake Police Dep't*, 54 F.4th 1232, 1236 (10th Cir. 2022)). However, Ms. Murphy alleges that Officer Ferris performed a PIT maneuver that resulted in Mr. Yohannes' car coming to a complete stop before being surrounded by police. Docket No. 36 at 13, ¶¶ 68-70. Ms. Murphy concedes that Mr. Yohannes was seized by the PIT maneuver before he was shot. *Id.*, ¶ 68. Therefore, the Fourteenth Amendment does not apply to Ms. Murphy's claims because her claims arise from uses of excessive force that occurred after Mr. Yohannes was seized by police. *McCowan v. Morales*, 945 F.3d 1276, 1283 (10th Cir. 2019) ("Here, the Fourth Amendment applies because the challenged force occurred after McCowan had been arrested without a warrant and before any determination as to whether there was probable cause to charge him with a

crime."); *Pauly v. White*, 874 F.3d 1197, 1214-15 (10th Cir. 2017) ("*All* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." (quoting *Graham*, 490 U.S. at 395 (alterations omitted)).  The Court will grant defendants' motion to the extent it seeks to dismiss Ms. Murphy's claims under the Fourteenth Amendment.[4]

Defendants argue that Ms. Murphy's third claim should be dismissed in its entirety.  Docket No. 38 at 9-10.  Ms. Murphy's third claim for relief is titled "42 U.S.C. § 1983 – Defendants engaged in Willful and Wanton Conduct that Resulted in the Decedent's Wrongful Death."  Docket No. 36 at 29.  Defendants maintain that § 1983 is not an independent source of rights, but is instead a cause of action to vindicate rights

---

[4] In her response, Ms. Murphy argues that "Mr. Yohannes had a protected interest under the 14th Amendment of the United States Constitution to enjoy the equal protection of the laws, including the right to be free from racial discrimination in actions by law enforcement officers."  Docket No. 44 at 5, ¶ 25.  She claims that "Officer Defendants acted with an intent or purpose to discriminate against Mr. Yohannes solely because he was a Black man."  *Id.* at 6, ¶ 30.  However, nowhere in the complaint does Ms. Murphy include allegations that defendant violated the Equal Protection Clause of the Fourteenth Amendment or that their fatal shooting of Mr. Yohannes was motivated by racial animus.  *See* Docket No. 36.  Instead, the complaint includes a single reference to the fact that the "Aurora Police Department's actions not only demonstrate a complete disregard for human life but also a troubling pattern of excessive force, disproportionately affecting Black individuals in our community."  *Id.* at 3.  The Court finds that Ms. Murphy's complaint does not include a claim for violations of the Equal Protection Clause of the Fourteenth Amendment.  Therefore, the Court will not consider Ms. Murphy's allegations regarding racial discrimination or her argument that she has plausibly stated a claim under the Equal Protection Clause.  *See Cnty. of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002) ("In deciding a Rule 12(b)(6) motion, a federal court may only consider facts alleged within the complaint."); *Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015) ("Plaintiff, however, cannot amend her complaint by adding factual allegations in response to Defendant's motion to dismiss." (citing *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995)).

under the United States Constitution and federal laws.  Docket No. 38 at 9 (citing *Gonzaga Univ. v. Doe,* 536 U.S. 273, 285 (2002) ("§ 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.,* rights independently 'secured by the Constitution and laws' of the United States.")).  Therefore, defendants appear to argue that, to the extent that Ms. Murphy's third claim for relief is based on the Fourth Amendment, it is duplicative of her first two claims.  *Id.* ("As set forth in the preceding section of this motion, Plaintiff's sole avenue of remedy for the excessive force claim is through the Fourth Amendment.").  Defendants further assert that, to the extent Ms. Murphy's third claim is based on alleged violations of the Fourteenth Amendment, the claim should be dismissed for the same reasons discussed above.  *Id.* at 11.  Finally, defendants maintain that Ms. Murphy's third claim should be dismissed to the extent it is based on a state law claim for willful and wanton conduct because her claim is brought under § 1983 and the complaint does not identify an alternative state cause of action.  *Id.* at 9-10.

Ms. Murphy first responds that, pursuant to Colo. Rev. Stat. § 13-21-202, surviving family members can recover damages when a death is caused by willful and wanton conduct.  Docket No. 44 at 7, ¶ 34.  She claims that she has plausibly alleged that defendants' acted in a willful and wanton manner when they shot and killed Mr. Yohannes.  *Id.*, ¶¶ 36, 39-40.  However, Ms. Murphy's third claim for relief states that the claim is brought pursuant to § 1983.  Docket No. 36 at 29.  Section 1983 protects rights secured by federal law.  *See Clark v. Bowcutt*, 675 F. App'x 799, 804 (10th Cir. 2017) (section 1983 "allows an injured person to seek damages against an individual who has violated his or her federal rights").  Therefore, Ms. Murphy's reference to a

11

Colorado statutory cause of action is irrelevant to her § 1983 claim.  Moreover, nowhere in the complaint does Ms. Murphy reference § 13-21-202.  *See* Docket No. 36.  For the reasons discussed above, Ms. Murphy's attempt to amend her complaint through her response to defendants' motion to dismiss is improper.  *See Abdulina*, 79 F. Supp. 3d at 1206.  Therefore, the Court will not consider Ms. Murphy's argument regarding defendants' alleged violation of § 13-21-202.

Second, Ms. Murphy responds that her third claim alleges that defendants' conduct was "conscience-shocking."  Docket No. 44 at 9, ¶ 52.  However, whether defendants' conduct shocks the conscience is only relevant under the standard for violations of the Fourteenth Amendment.[5]  *See Roska*, 328 F.3d at 1243.  For the reasons discussed above, the Court finds that Ms. Murphy's claim cannot be brought under the Fourteenth Amendment, and her third claim for relief, like her first two claims for relief, should be dismissed on this basis.  Therefore, the Court will grant defendants'

---

[5] The Court notes that, as part of the relief requested by Ms. Murphy, she seeks punitive damages.  Docket No. 36 at 32.  "In a § 1983 suit, '[a] jury may be permitted to assess punitive damages in an action' if the plaintiff shows that the defendant's conduct is 'motivated by evil motive or intent, or when it involved a reckless or callous indifference to the federally protected rights of others.'"  *Brown v. Flowers*, 2023 WL 6861761, at *5 (10th Cir. Oct. 18, 2023) (quoting *Eisenhour v. County*, 897 F.3d 1272, 1280 (10th Cir. 2018)).  However, nothing in Ms. Murphy's complaint suggests that the allegations in her third claim is direct towards her claim for punitive damages.  *See* Docket No. 36.  Moreover, "punitive damages claims are not independent causes of action—they are a remedy."  *Morrisett v. Baskerville-Phillips*, 2023 WL 3212623, at *2 (D. Utah May 2, 2023); *see also Muffoletto v. Christus St. Vincent Reg'l Med. Ctr.*, 157 F. Supp. 3d 1107, 1113 (D.N.M. 2015) ("As an initial matter, the Court will dismiss Plaintiff's 'cause of action' for punitive damages *sua sponte*.  Punitive damages, as their name indicates, are a form of relief, not an independent claim.").

partial motion to dismiss and will dismiss Ms. Murphy's third claim for relief in its entirety.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Partial Motion to Dismiss Plaintiff's Second Amended Complaint (ECF 36) [Docket No. 38] is **GRANTED**.  It is further

**ORDERED** that plaintiff's first and second claims for relief are **DISMISSED with prejudice** to the extent they are based on violations of the Fourteenth Amendment.[6]  It is further

**ORDERED** that plaintiff's third claim for relief is **DISMISSED with prejudice**.[7]

DATED September 3, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[6] The Court dismisses plaintiff's first and second claims with prejudice because amendment would be futile.  *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999) ("the district court may deny leave to amend where amendment would be futile").  The Court has found that Ms. Murphy's claims cannot be brought under the Fourteenth Amendment because they are governed by the Fourth Amendment.

[7] The Court dismisses plaintiff's third claim with prejudice because amendment would be futile.  *Jefferson Cnty. Sch. Dist. No. R-1*, 175 F.3d at 859.  The Court has found that § 1983 does not supply an independent basis for Ms. Murphy's claim.

13